**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHER DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **TIM RICH,** | **Case No. 11 C 7656** |
| **Plaintiff,** | |
| v. | **Judge Harry D. Leinenweber** |
| **QUAD/GRAPHICS PRINTING CORP.,** *et al.,* | |
| **Defendants.** | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tim A. Rich (hereinafter, "Rich" or "Plaintiff") brings this action against World Color Mt. Morris II, LLC and Quad/Graphics Inc. (collectively, the "Defendants"), alleging claims of premises liability, general negligence, and construction negligence for failure to provide him with a safe workplace. Defendants now move for summary judgment [ECF No. 72]. For the reasons stated herein, the Motion is denied.

**I. BACKGROUND**

The following facts are largely undisputed unless noted below. This case arises out of a personal injury accident. At the time of the accident, Rich was a journeyman insulator working for Sprinkmann Sons Corporation ("Sprinkmann"). In November 2010, Sprinkmann contracted with Defendants for Sprinkmann to install ductwork at Defendants' facility in Mt. Morris, Illinois.

Pursuant to that contract, Defendants provided Rich with a Lift-A-Loft man-lift for use at their facility. The lift had a toe-kick board, or lip, which was approximately two to three inches in height and extended around the perimeter of the platform base, including across the doorway. The lip was placed on the lift by the manufacturer, and its purpose is to keep items on the lift's platform from rolling off and falling on people below. Defendants had never modified or removed the lip in the twenty years it had been in use. In addition to the lip, the lift had a twelve or thirteen inch doorway and a two-step ladder for entering and exiting the lift. Defendants did not instruct Rich or other Sprinkmann employees on how to enter and exit the lift.

Rich performed most of the installation work using the Lift-A-Loft lift on November 26, 27, and 29, 2010. During the course of each 8-hour workday, Rich entered and exited the lift at least eight times without tripping on the lip. Rich never complained directly to his supervisor at Sprinkmann about the lip being a trip hazard, but he did complain generally that the lift was dangerous.

On November 30, 2010, after completing the installation, Rich lowered and attempted to exit the lift. According to Rich, exiting the lift required him to turn sideways through the lift door and maneuver his tool belt so as to prevent it from snagging

on the doorway. In the process of doing so, Rich tripped on the lip and fell to the ground below.

The parties dispute whether anyone had ever tripped on or complained about the lip prior to Rich's fall. On the one hand, Defendants' acting Safety Director, Bruce Dorn ("Dorn"), testified at his deposition that he had never received any safety complaints about the lift. Also, Defendants' maintenance manager, Jeff Warren ("Warren"), testified that he had never heard of anyone tripping while trying to exit the lift and that he was not aware of any complaints Rich may have made to anyone about the lift prior to his accident. Defendants' maintenance supervisor, Larry White ("White"), testified that he had never received any complaints from any Sprinkmann employees about any of Defendants' lifts.

Safety Director Dorn further testified that the lift had passed inspection on November 10, 2010 — twenty days before Rich's accident. According to Dorn, the inspection revealed that "[t]here [were] a couple of small cosmetic issues, but . . . nothing of a safety nature," and that the lift checked out "operations-wise." White, meanwhile, testified that Defendants did not "perform any specific safety inspection of the lift in relationship to the usage that Sprinkman[n] employees would be using it for."

On the other hand, Defendants' truck mechanic and maintenance welder, Thad Rosquist ("Rosquist"), testified as follows:

> Q: When you used the Lift-A-Loft lift, did you notice any problems or concerns using it or getting in and out of it?
>
> A: Yeah. You had about a 12-inch doorway, and you had to step over a piece of tubing to get in and out. You had to hang off a two-step ladder to get in the thing and pull yourself through that little doorway. If you had a harness on or whatever and snagging, it was a nightmare lift. Trying to get out, you had to back out. You know, you'd back out and try to feel the ladder and holding yourself on there, and you'd get your foot on the ladder and climb off. It wasn't funny; it was a heap. It was hard to get in and out of, I'll tell you that.
>
> Q: These concerns you had, were they at times safety concerns, getting in and out?
>
> A: Nah. Just the way it was; use [sic] it.
>
> Q: When you said you had concerns about getting in and out of it and there was something you had to step over at the entranceway, did you recognize that could be a potential hazard for people getting in and out?
>
> A: It was a trip hazard.

Later in the deposition, Rosquist stated:

> A: Widow Maker, that's what [the lift] was called.
>
> Q: It was called [that] when?
>
> A: All the time by the maintenance guys.
>
> Q: Why was it called that?

>     A:   Trip hazard.
>
>     Q:   Trip hazard to get in and out of?
>
>     A:   Yeah. You try backing out of there with all your tools or whatever, try getting out of there, a 12-inch door, it's crazy.

When asked whether he was aware of any workers tripping on the lift, Rosquist answered, "It's been complained about, yes." When asked if he had ever complained personally about the lift to others, Rosquist stated, "Just being wore out and junk, yeah." When asked if he made any complaints to the maintenance supervisor, Rosquist stated that "[Larry White] was one of us the year before."

Moreover, Defendants' industrial electrician, Randy Boggs ("Boggs"), testified that the first step of the two-step ladder exit was a "blind step." Boggs stated: "Because of the way you have to exit the floor, it's a blind step down. . . . You can't see where you're stepping. . . . You [have to] feel for it." Later, Boggs stated that he agreed the lip was a tripping hazard. Boggs also testified that he thought the lift was especially hard to climb out of while wearing a tool belt because "it was just an added piece of equipment to get through the small door."

Sprinkmann employee and Rich's co-worker, Jeffrey Dees ("Dees"), testified that in his experience it is common for lifts to have a toe-kick board or lip, but that he had never seen one with a lip extending across the entry point until working on

Defendants' Lift-A-Loft lift. Dees further testified that, "If there's something in the way when you're exiting and somebody isn't aware that it's there, maybe they forget it's there, it's going to be less safe because, yes, they might hit it."

After his trip and fall, Rich filed a Complaint against Defendants under theories of premises liability, general negligence, and construction negligence, alleging that Defendants failed to provide him with a safe place to work. Defendants now move for summary judgment on each of Rich's claims.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *O'Leary v. Accretive Health, Inc.,* 657 F.3d 625, 630 (7th Cir. 2011). In assessing whether the record entitles the defendants to judgment as a matter of law, the Court views the facts in the light most favorable to the non-moving party, resolving all evidentiary conflicts in that party's favor, and according that party the benefit of all reasonable inferences that may be drawn. *See, O'Leary,* 657 F.3d at 630.

A federal court exercising jurisdiction based on diversity of citizenship applies state substantive law. *Malen v. MTD Products, Inc.,* 628 F.3d 296, 303 (7th Cir. 2010).

## III. ANALYSIS

Defendants contend that each of Rich's claims must fail as a matter of law because Rich cannot satisfy the duty element essential to all negligence claims. In a negligence action under Illinois law, a plaintiff must show that the defendant owed the plaintiff a duty and that the defendant breached that duty, which proximately caused the plaintiff's injuries. *Ward v. K Mart Corp.,* 554 N.E.2d 223, 226 (Ill. 1990). Whether a duty exists is a question of law for the court to decide. *Forsythe v. Clark USA, Inc.,* 864 N.E.2d 227, 232 (Ill. 2007). But oftentimes determining whether a duty exists as a matter of law depends upon the underlying facts, making the duty question a mixed question of law and fact. *King v. NLSB,* 730 N.E.2d 1222, 1225 (Ill. App. Ct. 2000). If the duty issue is a mixed question of law and fact, the Court must deny summary judgment if there is a genuine issue as to the underlying material facts that would establish a duty. *See, id.; see also,* FED. R. CIV. P. 56(a).

Generally, a duty of care arises where the parties stand in such a relationship to one another that the law imposes upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff. *Ward,* 554 N.E.2d at 226. In determining whether a defendant owed the plaintiff a duty, courts consider: the reasonable foreseeability of injury, the likelihood of injury, the magnitude of the burden on the defendant in guarding against injury, and the consequences of placing that burden on the

defendant.  *LaFever v. Kemlite Co.,* 706 N.E.2d 441, 446 (Ill. 1998).

**A. General Negligence and Premises Liability Under § 343**

In premises liability cases, Illinois courts analyze the foreseeability and likelihood factors under § 343 of the Restatement (Second) of Torts, which states, in pertinent part:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a)  knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b)  should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c)  fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343 (1965); *LaFever,* 706 N.E.2d at 447. Knowledge of the condition can be either actual or constructive. *Genaust v. Ill. Power Co.,* 343 N.E.2d 465, 472 (Ill. 1976).

Section 343A, however, provides a "known or obvious dangers" exception to § 343 and states in pertinent part:

> A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

Restatement (Second) of Torts § 343A(1).

### *1. Actual or Constructive Notice*

Defendants contend they did not owe Rich a duty of care because they did not have actual or constructive notice of a dangerous condition at their facility. To establish a duty of care, a plaintiff must show the defendant had actual or constructive notice of the condition on its premises causing an unreasonable risk of harm. *Genaust,* 343 N.E.2d at 472. "Generally, if a plaintiff is relying on proof of constructive notice, she must establish that the dangerous condition existed for a sufficient time or was so conspicuous that the defendant should have discovered the condition through the exercise of reasonable care." *Smolek v. K.W. Landscaping,* 639 N.E.2d 974, 976–77 (Ill. App. Ct. 1994).

Defendants argue they did not have actual notice of a dangerous condition because their supervisors never received complaints that the lip was dangerous. There is some evidence supporting that argument. Defendants have presented testimony from their safety director, maintenance manager, and maintenance supervisor, all of whom say they never received any complaints about the lift or its lip.

However, Rich has come forward with evidence showing that Defendants were aware of the lip on the lift that Defendants had used — without modification or removal of the lip — for nearly

twenty years. More importantly, although Defendants' maintenance supervisor, Larry White, testified that he never received any complaints about the lift or its lip, Rich has provided evidence that White was one of Defendants' regular employees prior to being the maintenance supervisor. And Rosquist testified that, during the time when White was one of the regular employees, all of the regular employees knew of the lift's dangerousness. When Rosquist was asked whether anyone complained to White about the lift, he responded that "[White] was one of us the year before," indicating that White knew of the lift's dangerousness even before he became a supervisor. Rich has therefore established a genuine factual dispute regarding whether Defendants had actual or constructive knowledge of the lift's dangerousness.

Defendants argue, however, that they owed Rich no duty because they simply provided Rich a lift to use, did not modify the lip at any time, and conducted regular inspections to ensure the lift was not defective. These arguments are unavailing. In *Culli v. Marathon Petroleum Co.*, 862 F.2d 119 (7th Cir. 1988), the plaintiff stepped on a slippery substance and fell while walking through the defendants' gas station lot. *Id.* at 122. There was evidence of spills on a daily basis in the pump area and that the volume of sales on the day of the incident made it unreasonable for the defendants to sweep the lot only at night. *Culli*, 862 F.2d at 126–27. The court found "the defendants were

on constructive notice of a dangerous condition since such condition was a recurring situation on their property and their maintenance of the property was unreasonable." *Culli*, 862 F.2d at 128.

Similarly, the facts in this case, when viewed in the light most favorable to Rich, show that getting in and out of the lift was a recurring situation fraught with danger. Like the defendants in *Culli,* who did not themselves spill the slippery substance on which the *Culli* plaintiff slipped, Defendants in this case cannot deny existence of a duty just because they did not place the lip on the lift and only provided it to Rich for use.

Viewing all these facts in the light most favorable to Rich, the Court finds that Rich has established a genuine factual dispute regarding Defendants' knowledge of the lift's dangerousness. Therefore, the Court must deny Defendants' Motion for Summary Judgment on this issue. *See, King,* 730 N.E.2d at 1226 (finding that, where "reasonable people could disagree" regarding the underlying facts that establish or disestablish a duty, "[t]he appropriate arbitrator is . . . the jury").

### 2. *Open and Obvious Doctrine*

Defendants contend that even if they had notice of the lip's dangerousness, the open and obvious exception applies to negate any duty of care owed. Rich does not dispute that the lip is an

open and obvious danger. Instead, Rich argues that two exceptions to the open and obvious rule apply in this case — the deliberate encounter exception and the distraction exception.

*i. Deliberate Encounter Exception*

The open and obvious rule does not apply if "the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger." Restatement (Second) of Torts §343A, cmt. f; *see also, Kleiber v. Freeport Farm and Fleet, Inc.,* 942 N.E.2d 640, 648 (Ill. App. Ct. 2010). This "deliberate encounter" exception recognizes that oftentimes (1) individuals will make deliberate choices to encounter known and obvious hazards when faced with employment concerns and (2) those encounters are reasonably foreseeable by possessors of property. *LaFever,* 706 N.E.2d at 448-49. Although the exception usually involves some economic compulsion to encounter the danger, the Illinois Supreme Court has not limited the exception to only those kinds of situations. *Sollami v. Eaton,* 772 N.E.2d 215, 224 (Ill. 2002). Instead, the focus "'is on what the landowner anticipates or should anticipate the entrant will do.'" *Kleiber,* 942 N.E.2d at 648 (quoting *Buerkett v. Ill. Power Co.,* 893 N.E.2d 702, 710 (Ill. App. Ct. 2008)).

Defendants contend the deliberate encounter exception is inapplicable for two reasons. First, Defendants argue that Rich

did not encounter an open and obvious danger "that he could not avoid, no matter what, each and every time" he performed his job, as shown by Rich having used the lift on prior occasions without tripping. The Court rejects this argument, which is based on the premise that not tripping on prior occasions demonstrates the lift was not dangerous. The law is clear that a person need not injure himself every time a condition is encountered in order for it to be deemed unreasonably dangerous. *See, LaFever,* 706 N.E.2d at 446-51 (fiberglass waste on ground was a hazard even though driver walked on it multiple times prior to falling); *Morrissey v. Arlington Park Racecourse, LLC,* 935 N.E.2d 644, 648–60 (2010)(wet asphalt was a dangerous condition even though plaintiff walked on it many times before slipping). Moreover, Defendants have not cited to and the Court knows of no case law supporting the proposition that if a plaintiff had encountered the condition prior to his injury, in order for the deliberate encounter exception to apply, the condition must have been dangerous every time the plaintiff had encountered it.

Second, Defendants argue that Rich did not inquire and has not shown there was no other option available to him. These arguments are unavailing. In *Ralls,* the court found it reasonably foreseeable that construction workers would use the shortest path to the building of a worksite, even though the path was snow-covered and slippery and there existed a longer, more

inconvenient, route. *Ralls v. Vill. of Glendale Heights,* 598 N.E.2d 337, 344–45 (Ill. App. Ct. 1992). "The Illinois Supreme Court has expressly rejected . . . a test which would require a showing that the worker had no reasonable alternative but to encounter the danger before liability could attach." *Staples v. Krack Corp.,* 186 F.3d 977, 981 (7th Cir. 1999). Therefore, even if another lift existed, that fact alone does not foreclose application of the deliberate encounter exception.

In this case, there is no dispute that Defendants provided the lift for Rich's use, and it appears that using a lift was necessary to complete the installation. Thus, assuming Defendants had knowledge of the open and obvious danger, Defendants should have reasonably anticipated that employees like Rich would deliberately encounter the danger because, without doing so, they would not be able to complete they were hired to do. It is reasonable to infer from these facts that Rich would face termination or some other discipline if he refused to encounter the danger and thereby refused to do his job. The deliberate encounter exception therefore applies in this case. *See, Staples,* 186 F.3d at 980 (finding that, although a plaintiff need not "furnish proof of an actual threat of termination if the danger is not encountered," the exception applies so long as the facts "support a conclusion that if the plaintiff fails to encounter the danger he will suffer negative consequences in

terms of his employment, including discipline that falls short of termination").

*ii. Distraction Exception*

Rich next argues that the "distraction" exception to the open and obvious rule applies in this case. Under this exception, the open and obvious rule does not apply if the possessor "has reason to expect the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." *Ward,* 554 N.E.2d at 230-31.

Illinois courts have not adopted a precise definition of what constitutes a "distraction." Recently, however, the Illinois Supreme Court in *Bruns* explained:

> A review of our case law, in which we have found the distraction exception applicable, provides a basis for some general observations about the nature of a distraction. . . . In each of these cases [where the exception applied], some circumstance was present that required the plaintiff to divert his or her attention from the open and obvious danger, or otherwise prevented him or her from avoiding the risk. . . . Each of the foregoing cases also made clear that the distraction was reasonably foreseeable by the defendant.

*Bruns v. City of Centralia,* --- N.E.3d ---. No. 11698, 2014 IL 116998, at *6-7 (Ill. Sept. 18, 2014). The Court further explained:

> A plaintiff should not be allowed to recover for self-created distractions that a defendant could never reasonably foresee. In order for the distraction to be foreseeable to the defendant so that the defendant can take reasonable steps to prevent injuries to invitees, the distraction should not be solely within the plaintiff's own creation. The law cannot require a possessor of land to anticipate and protect against a situation that will only occur in the distracted mind of his invitee.

*Id.* at *7 (citing *Whittleman v. Olin Corp.*, 832 N.E.2d 932, 936 (Ill. App. Ct. 2005)). Thus, while no liability will lie for an invitee's self-made distractions, a defendant will be liable where a distraction requires a plaintiff to divert himself from the open and obvious danger, and it is reasonably foreseeable to the defendant that a reasonable person in the plaintiff's position could be distracted.

Rich asserts he tripped on the lip while exiting the lift because he was distracted with preventing his tool belt from getting caught on the lift door. The record, viewed in Rich's favor, demonstrates that in order to get in and out of the lift, a worker had to step over the lip, maneuver through a small doorway, hang over a two-step ladder onto a blind step, and make sure that his tool belt did not snag on the door. There is ample evidence to show that Defendants had reason to expect that a reasonable person in Rich's position could be distracted when entering or exiting the lift so as to forget the open and obvious

danger of the lip or fail to protect himself from it. Defendants' own employee stated as much. The distraction exception therefore applies in this case.

### B. Construction Negligence Under § 414

Defendants next contend they owed no duty of care under Rich's construction negligence claim. Illinois follows § 414 of the Restatement in analyzing construction negligence claims. *Bokodi v. Foster Wheeler Robbins, Inc.,* 728 N.E.2d, 730-33 (Ill. App. Ct. 2000)(citing Restatement (Second) of Torts § 414). To show duty of care, a plaintiff must show that the general contractor had actual or constructive knowledge of unsafe work methods or a dangerous condition. *Cochran v. George Sollitt Constr. Co.,* 832 N.E.2d 355, 365–66 (Ill. App. Ct. 2005).

Defendants maintain that they did not have actual or constructive knowledge of any safety hazard for the same reasons as argued under Rich's premises liability claim: that Defendants' supervisors had never received complaints about the lip being a trip hazard, there was no written documentation of it being a trip hazard, and there were no previous injuries to anyone tripping over the lip. The Court disagrees for the same reasons stated above. This is a mixed question of law and fact, and both parties have presented sufficient evidence that would allow a reasonable jury to find in their favor on the factual issue of whether Defendants had actual or constructive knowledge

of the lift's dangerous condition. It is therefore up to the jury, and not the Court, to determine whether Defendants had knowledge of the dangerous condition. *See, King,* 730 N.E.2d at 1225-26.

### C. Duty of Care

Having found, in each of Rich's theories of recovery, the foreseeability and likelihood of injury factors as weighing in favor of a duty, the Court next considers the remaining duty of care factors: the magnitude of the burden on the defendant in guarding against injury and the consequences of placing that burden on the defendant. *LaFever,* 706 N.E.2d at 446.

The Court finds that the magnitude of the burden on defendants in guarding against injury was slight. Simply conducting safety training on entering and exiting the lift, providing another lift without a lip, posting warnings on the lift to watch for the lip, or offering safety gear to prevent falling to the ground could reasonably have guarded against Rich's trip and fall injury. More significantly, however, is the undisputed fact that Defendants agreed to provide man-lifts for Sprinkmann employees for use at their facility. Having thus agreed to supply the lifts, the Court finds that Defendants had the burden of guarding against an unreasonable risk of injury in operating them.

Because these factors also weigh in favor of finding a duty of care, the Court cannot find as a matter of law that Defendants owed Rich no duty of care.

### IV. CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment [ECF No. 72] is denied.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　**Harry D. Leinenweber, Judge**
　　　　　　　　　　　　　　　　　**United States District Court**
**Dated:11/10/2014**